

FILED
2021 Aug-24  PM 12:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **EMMANUEL PULLOM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:20-cv-01912-AMM** |
| ) | |
| **JEFFERSON COUNTY,** ) | |
| **ALABAMA; JEFFERSON** ) | |
| **COUNTY SHERIFF'S** ) | |
| **DEPARTMENT, ALABAMA;** ) | |
| **MARK PETTWAY, Individually** ) | |
| **and in his official capacity as** ) | |
| **Sheriff of Jefferson County,** ) | |
| **Alabama; DEPUTY FREDERICK,** ) | |
| **Individually and in his official** ) | |
| **capacity as a Deputy Sheriff of** ) | |
| **Jefferson County, Alabama; and** ) | |
| **COURTNEY BROOK SHAVER,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION ON PENDING MOTIONS TO DISMISS

This case is before the court on a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Jefferson County Sheriff's Office, Sheriff Mark Pettway, and Deputy Donny Frederick (collectively, the "Sheriff's Office Defendants"), Doc. 8, and a Motion to Dismiss filed by Defendant Jefferson County, Alabama (the "County"), Doc. 9. For the reasons stated below, both motions are **GRANTED**.

## I.      BACKGROUND

In relevant part, viewed in the light most favorable to Plaintiff Emmanuel Pullom, the complaint alleges as follows:

In March 2018, Mr. Pullom purchased a Ford F-150 pick-up truck from an individual named Bryson Cody Lewis. Doc. 1 ¶ 8. "Shortly after [the] purchase, the truck needed repair[s]," so Mr. Pullom returned it to Mr. Lewis. *Id*. ¶ 9. "Later, [Mr.] Lewis told [Mr. Pullom] that the vehicle was stolen from his backyard," but Mr. Pullom "discovered that the vehicle had not been stolen, [and] . . . was still in [Mr.] Lewis' possession." *Id*. ¶¶ 10–11.

On or around December 1, 2018, Mr. Pullom "retrieved the truck from [Mr. Lewis'] backyard" and drove to Minor Parkway in Jefferson County, Alabama. *Id*. ¶ 12. Mr. Pullom was stopped on Minor Parkway by Deputy Frederick, a Jefferson County Deputy Sheriff. *Id*. "During the traffic stop, [Deputy Frederick] took from [Mr. Pullom] his bill of sale for the truck." *Id*. ¶ 13. The truck was then impounded and later released to Defendant Courtney Brook Shaver, "who allegedly had a title and bill of sale for the truck." *Id*. ¶ 14. But Shaver, who Mr. Pullom believes to be a friend of Mr. Lewis, "did not have a title nor bill of sale for the truck." *Id*. ¶¶ 15–16.

Mr. Pullom brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") and the First, Fourth, and Fourteenth Amendments to the United States Constitution, *id*. at 2, and asserts four counts: (1) False Arrest by Deputy Frederick, (2) False

Imprisonment by Deputy Frederick, (3) Negligence in Hiring, Training, Supervision and Retention by Sheriff Pettway, the Jefferson County Sheriff's Office, and the County, and (4) Assault and Battery by Defendant Frederick, *id*. at 3–8. Mr. Pullom alleges that the defendants violated his constitutional rights "by wrongfully and without just cause stopping him in his vehicle, arresting, imprisoning and prosecuting him." *Id*. at 1.

Mr. Pullom's complaint asserts claims against Deputy Frederick and Sheriff Pettway individually and in their official capacities. *Id*. at 1. Mr. Pullom asserts that Deputy Frederick "was at all times relevant [to this lawsuit] . . . duly appointed and acting [as] a deputy sheriff with th[e] Jefferson County Sheriff's Department and was acting under the supervision of [Sheriff] Pettway." *Id*. ¶ 6. Mr. Pullom also asserts that, "[a]t all times mentioned [in the complaint], Deputy Frederick acted within the scope of his authority as an employee and agent of the Jefferson County Sheriff's Department." *Id*. ¶ 7. Further, Mr. Pullom asserts that, "[a]t all times mentioned [in the complaint], [Sheriff] Pettway and [Deputy] Frederick, were acting within the scope of their duties as law enforcement officers and under color of the law, to wit, under the color of ordinances, regulations, policies, customs and usages of the State of Alabama and the defendants Jefferson County and the Sheriff's Department." *Id*. Further, Mr. Pullom asserts that the County and the Jefferson County Sheriff's Department "are liable because of their policy and custom of

encouraging, tolerating, permitting and ratifying a pattern and practice of illegal arrests, imprisonments and prosecutions, which were known to it or which should have been known to it." *Id.* ¶ 1.

On January 6, 2021, the Sheriff's Office Defendants filed their motion to dismiss Mr. Pullom's complaint pursuant to Rule 12(b)(6), asserting that the complaint "fails to state a claim upon which relief can be granted," and that the Sheriff's Office Defendants "are entitled to qualified immunity on all federal claims . . . and state/absolute immunity on all state law claims." Doc. 8 at 2. The County also filed a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. Doc. 9. The court ordered a briefing schedule. Doc. 13. In the several months that have elapsed since the pending motions to dismiss were filed, Mr. Pullom has not filed a response to either of the two pending motions to dismiss.

## II.   STANDARD OF REVIEW

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its purpose is only to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.   ANALYSIS

### A. The Sheriff's Office Defendants' Motion To Dismiss

#### 1.   Allegations Against The Jefferson County Sheriff's Office

The Sheriff's Office Defendants assert that "[u]nder Alabama law and Eleventh Circuit precedent, a sheriff's department or sheriff's office is not a legal entity subject to suit." Doc. 8-1 at 12. The Eleventh Circuit has observed that "[s]heriff's departments . . . are not usually considered legal entities subject to suit, . . . but capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214–15 (11th Cir. 1992) (internal quotation marks omitted); Fed. R. Civ. P. 17(b). The Alabama Supreme Court has held that "[i]t is clear under Alabama law that the sheriff's department is not a legal entity subject to suit." *Ex parte Haralson*, 853 So. 2d 928, 931 (Ala. 2003). Accordingly, Mr. Pullom's claims against the Jefferson County Sheriff's

Office are dismissed. *See Barber v. Alabama*, No. 2:20-CV-00659-MHH, 2021 WL 37634, at *10 (N.D. Ala. Jan. 5, 2021) (holding that the plaintiff could not state a claim against the sheriff's department because, under Alabama law, the sheriff's department is not subject to suit).

### 2. Allegations Against Deputy Frederick

### a. Claims Against Deputy Frederick in His Official Capacity

The Eleventh Circuit has held that "[i]t is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment." *Melton v. Abston*, 841 F.3d 1207, 1234 (11th Cir. 2016). Accordingly, the court finds that Deputy Frederick is "immune from suit under the Eleventh Amendment for [Mr. Pullom's] claims brought against [him] in [his] official capacity as [a] state official[]." *Id.*

### b. Section 1983 Claims: False Arrest and False Imprisonment

The Sheriff's Office Defendants assert that the court "should dismiss all the 42 U.S.C. § 1983 claims asserted against Defendants based on Defendants' qualified immunity" because "[t]he allegations do not show that Defendants violated any of [Mr. Pullom's] constitutional rights and, even if they did, that the rights were so clearly established at the time of the alleged violation." Doc. 8-1 at 13.

Qualified immunity shields government officials from liability unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019) (internal quotation marks omitted). A government official asserting a qualified immunity defense "bears the initial burden of showing that he was 'acting within his discretionary authority.'" *Id*. (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007)).

After the official makes this initial showing, the "burden shifts to the plaintiff to show that (1) the officer violated a constitutional right[,] and (2) the right was clearly established at the time of the alleged violation." *Id*. (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). An "official is entitled to qualified immunity if the plaintiff fails to establish either" of the two parts of the standard. *Id*. (citing *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

### i.     Deputy Frederick's Burden To Show That He Was Acting Within His Discretionary Authority

An official acts within his discretionary authority if he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (quoting *Holloman*, 370 F.3d at 1264). "The inquiry is two-fold: 'We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to

utilize.'" *Id*. (quoting *Holloman*, 370 F.3d at 1265). "In applying each prong of this test, [a court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (internal quotation marks omitted).

"A bald assertion by the defendant that the complained-of actions were within the scope of his discretionary authority is insufficient." *Id*. (internal quotation marks omitted) (alterations accepted). Instead, a defendant must make its showing "by competent summary judgment materials," *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (internal quotation marks omitted), such as by reference to affidavit, *see id.* at 1284; *see also Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988), or to state law that controls the official's duties, *Estate of Cummings*, 906 F.3d at 940; *see also Barker v. Norman*, 651 F.2d 1107, 1125 (5th Cir. Unit A July 1981) (observing that "police officers may usually rely on standard operating procedures contained in their police manuals" to show "facts relating to the scope of [their] official duties") (internal quotation marks omitted).

Mr. Pullom alleges that Deputy Frederick performed a traffic stop and arrested Mr. Pullom "for not registering as a felon and having a felony identification card." Doc. 1 ¶¶ 12, 30. Further, Mr. Pullom alleges that Deputy Frederick "took from [Mr.

Pullom] his bill of sale for the truck" at issue, and that "[t]he truck was impounded." *Id*. ¶¶ 13–14. Mr. Pullom asserts that Deputy Frederick was "[a]t all times mentioned [in the complaint], . . . acting within the scope of [his] duties as [a] law enforcement officer[] . . . [and] within the scope of his authority as an employee and agent of the Jefferson County Sheriff's Department." *Id*. ¶ 7.

In their motion to dismiss, the Sheriff's Office Defendants assert that "Deputy Frederick had the authority to impound the vehicle pursuant to Ala. Code § 32-13-2 and Ala. Code § 32-5A-139(c) and the authority to place [Mr. Pullom] under arrest pursuant to Ala. Code § 13A-11-182 and § 13A-11-186." Doc. 8-1 at 20. They assert that "[b]ecause [Mr. Pullom] was in clear violation of these code sections, specifically Ala. Code § 13A-11-182 for failure to have registered as a felon and have his felony identification card in his possession, Deputy Frederick had the statutory authority to arrest [Mr. Pullom] and duty to impound the car pursuant to Ala. Code § 32-13-2 and Ala. Code § 32- 5A-139(c)." *Id*.

Under Ala. Code § 13A-11-182 "[i]t shall be unlawful for anyone who is required to register [as a felon] to be within any county in the state without having in his immediate possession a registration card." Further, under Ala. Code § 13A-11-186, "[a]ny person violating any provision of th[e] article [regarding registration of felons] shall be subject to a fine . . . , or imprisonment in the county jail . . . , or both such fine and imprisonment." Accordingly, it was a legitimate job-related

function for Deputy Frederick to arrest Mr. Pullom for not possessing a registration card. *See Spencer v. Benison*, No. 18-14397, 2021 WL 3009182, at *5 (11th Cir. July 16, 2021) (holding that a sheriff and sheriff deputies perform job-related functions when enforcing motor vehicle and traffic laws of Alabama).

Under Alabama Code § 32-13-2 "[a] law enforcement officer . . . may cause a motor vehicle to be removed to the nearest garage or other place of safety" if "[t]he motor vehicle is left unattended because the driver of the vehicle has been arrested . . . or for any other reason which causes the need for the vehicle to be immediately removed as determined necessary by a law enforcement officer." Ala. Code § 32-13-2(a)(2). Because Mr. Pullom (the driver of the truck at issue) was arrested, Deputy Frederick performed a legitimate job-related function pursuant to Alabama Code § 32-13-2 when he determined that it was necessary to have the truck removed and impounded.

      **ii.**    **Mr. Pullom's Burden To Show That Deputy Frederick Violated A Constitutional Right That Was Clearly Established**

"When presented with . . . officers' motions to dismiss [for failure to state a claim and qualified immunity], both [Eleventh Circuit] precedent and precedent from the Supreme Court instruct the district court to analyze whether, taking [the plaintiff's] allegations as true, the . . . complaint asserted a violation of a clearly

established constitutional right." *Joseph v. Gee*, 708 F. App'x 642, 643–44 (11th Cir. 2018).

Mr. Pullom alleges that Deputy Fredericks violated Mr. Pullom's rights under (1) the Fourth Amendment by "arresting him without probable cause," (2) the Fourteenth Amendment "by seizing his property without due process of law and by using criminal procedures to effect a civil repossession," and (3) Section 1983, which "enforc[es] the First, Fourth, and Fourteenth Amendments," by "threaten[ing] to do bodily harm to [Mr. Pullom], arrest[ing] [Mr. Pullom,] and . . . us[ing] . . . racial slurs." Doc. 1 at 3–4. Further, Mr. Pullom alleges that Deputy Frederick deprived him of his "liberty without due process of law," and "in violation of the First, Fourth, and Fourteenth Amendments," when Deputy Frederick detained and arrested him "without probable cause" and under a "law that is unconstitutional" because the "ordinance is overbroad and vague." *Id*. at 5. The Sheriff's Office Defendants assert that "Deputy Frederick has qualified immunity to those [Section] 1983 claims because he did not violate [Mr. Pullom's] constitutional rights and, even if he did, the rights were not clearly established at the time of the violation." Doc. 8-1 at 15–16.

*First*, Mr. Pullom alleges that Deputy Fredericks violated Mr. Pullom's rights under the Fourth Amendment by detaining and arresting Mr. Pullom without probable cause. Doc. 1 at 3–4. In his complaint, Mr. Pullom alleges that he was

detained and arrested "for not registering as a felon and having a felony identification card." *Id*. ¶ 30. The Sheriff's Office Defendants assert that "Deputy Frederick did not commit an unlawful seizure in violation of the Fourth Amendment," as "Deputy Frederick had . . . the authority to place [Mr. Pullom] under arrest pursuant to Ala. Code § 13A-11-182 and § 13A-11-186." Doc. 8-1 at 3, 16.

The Fourth Amendment provides that: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[A] warrantless arrest lacking probable cause violates the Constitution, and such an arrest can therefore potentially underpin a § 1983 claim," but "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018) (internal quotation marks omitted). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id*. at 1298 (internal quotation marks omitted). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id*. (internal quotation marks omitted).

Further, a police officer is entitled to qualified immunity from Fourth Amendment claims for false arrest even "if he had only 'arguable' probable cause to arrest the plaintiff." *Id*. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest." *Id*. (internal quotation marks and emphasis omitted). A determination of whether an officer had (actual or arguable) probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Id*. (internal quotation marks omitted).

In Mr. Pullom's complaint, he concedes that he was detained and arrested "for not registering as a felon and having a felony identification card." Doc. 1 ¶ 30. He does not allege any facts suggesting that he was not subject to the felony registration requirements under Alabama Code Sections 13A-11-182 and 13A-11-186, nor does he contest the basis for his arrest. *See id*. Accordingly, the court finds that Mr. Pullom did not meet his burden to show that Deputy Frederick violated his Fourth Amendment rights by allegedly detaining and arresting him without probable cause. That claim is subject to the defense of qualified immunity and is dismissed.

*Second*, Mr. Pullom alleges that Deputy Fredericks violated Mr. Pullom's rights under the Fourteenth Amendment by (1) "seizing his property without due process of law," (2) "using criminal procedures to effect a civil repossession," (3) depriving Mr. Pullom of his liberty without due process of law when he detained and

arrested him without probable cause, and (4) depriving Mr. Pullom of his liberty without due process of law when he detained and arrested him under a "law that is unconstitutional" because the "ordinance is overbroad and vague." Doc. 1 at 3–5. The Sheriff's Office Defendants assert that "Deputy Frederick did not violate the Due Process Clause." Doc. 8-1 at 21.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. Further, "[t]he Due Process Clause provides two different kinds of constitutional protections: procedural due process and substantive due process." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). The Eleventh Circuit has held that "[a] violation of either of these two kinds of protection may form the basis for a suit under § 1983." *Id.*

The court already found that Deputy Frederick is entitled to qualified immunity from Mr. Pullom's claims that there was not probable cause for his detention and arrest for failing to register as a felon and carry an identification card. *See supra* at pp. 11–13. Accordingly, Mr. Pullom's claim that Deputy Frederick violated his Fourteenth Amendment rights by allegedly detaining and arresting him without probable cause is also subject to the defense of qualified immunity and is dismissed.

Further, Mr. Pullom's complaint does not indicate whether he intends to assert a substantive and/or procedural due process claim against Deputy Frederick for the seizure of his property. *See* Doc. 1. Indeed, the complaint does not allege any facts in support his allegation that Deputy Frederick seized his property without due process of law. Nor has Mr. Pullom attempted to show that Deputy Frederick is not entitled to qualified immunity from such claims. Because Mr. Pullom did not meet his burden of showing that Deputy Frederick violated a constitutional right that was clearly established, his claim that Deputy Frederick seized his property without due process of law is subject to the defense of qualified immunity and is dismissed.

Similarly, Mr. Pullom's complaint does not allege any facts to support his allegation that Deputy Frederick violated his rights under the Fourteenth Amendment by using criminal procedures to effect a civil repossession. *See id*. ¶ 24. Because Mr. Pullom did not meet his burden of showing that Deputy Frederick violated his constitutional rights by using criminal procedures to prompt a civil repossession of Mr. Pullom's property, or that such a rights were clearly established, Mr. Pullom's claim that Deputy Frederick violated the Fourteenth Amendment by using criminal procedures to effect civil repossession is subject to the defense of qualified immunity and is dismissed.

Mr. Pullom also asserts that Deputy Frederick violated the Fourteenth Amendment by detaining and arresting him under a law that is unconstitutionally

overbroad and vague. *Id*. ¶¶ 32–33. But Mr. Pullom concedes that he was arrested for not registering as a felon and failing to have a felony identification card on his possession. *Id*. ¶ 30. The Alabama statute requiring such registration and identification card provides that "[i]t shall be unlawful for anyone who is required to register [as a felon] to be within any county in the state without having in his immediate possession a registration card." Ala. Code § 13A-11-182. The statute further provides that a failure to register and possess a registration card subjects the violator to a fine, imprisonment, or both. Ala. Code § 13A-11-186.

Mr. Pullom has not attempted to show that this statute has been declared unconstitutional, or that Deputy Fredericks violated a clearly established constitutional right by imprisoning him under this statute. *See Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005) ("[The defendant] was eligible for qualified immunity because he was acting under his discretionary authority in enforcing [a state statute] and its unlawfulness was not clearly established. At the time of [the plaintiff's] arrest, the statute had not been declared unconstitutional, and therefore it could not have been apparent to [the defendant] that he was violating [the plaintiff's] constitutional rights."). Mr. Pullom did not meet his burden of showing that Deputy Fredericks is not entitled to qualified immunity from his claim that his imprisonment for failing to comply with Alabama's felony registration statute was a deprivation of

due process. Accordingly, such claim as alleged is subject to the defense of qualified immunity and is dismissed.

*Third*, Mr. Pullom alleges that Deputy Fredericks violated Mr. Pullom's rights under the First Amendment by (1) detaining and arresting him without probable cause, and (2) detaining and arresting him under a "law that is unconstitutional" because the "ordinance is overbroad and vague." Doc. 1 at 3–5. The court has already found that Deputy Frederick is entitled to qualified immunity from Mr. Pullom's claims that there was not probable cause for his detention and arrest for failing to register as a felon and carry an identification card. *See supra* at pp. 11–13. And the Eleventh Circuit has held that "when an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest." *Gates*, 884 F.3d at 1298. Accordingly, Mr. Pullom's claim that Deputy Frederick violated his First Amendment rights by allegedly detaining and arresting him without probable cause is subject to the defense of qualified immunity and is dismissed.

Likewise, the court already found that Mr. Pullom has not shown that Alabama's felony registration statute has been declared unconstitutional, or that Mr. Fredericks violated a clearly established constitutional right by imprisoning him under this statute. *See supra* at pp. 15–17; *Cooper*, 403 F.3d at 1220. Accordingly, Mr. Pullom's claim that his First Amendment rights were violated when Deputy

Frederick detained and arrested him under an unconstitutional statute is subject to the defense of qualified immunity and is dismissed.

*Fourth*, Mr. Pullom alleges that Deputy Fredericks violated Mr. Pullom's rights under Section 1983, which "enforc[es] the First, Fourth, and Fourteenth Amendments," by "threaten[ing] to do bodily harm to [Mr. Pullom]," and "us[ing] . . . racial slurs." Doc. 1 at 4. Mr. Pullom's complaint did not allege any additional facts regarding Deputy Frederick's alleged threats and racial slurs. Because Mr. Pullom's complaint failed to allege a violation of a clearly established constitutional right, the Section 1983 claims are subject to the defense of qualified immunity and are dismissed. *See Kelly v. Curtis*, 21 F.3d 1544, 1550 (11th Cir. 1994) ("A plaintiff cannot rely on general, conclusory allegations or broad legal truisms to show that a right is clearly established," and "must show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." (internal quotation marks omitted)).

### c. State Law Claims: Assault and Battery

Mr. Pullom asserts state-law claims against Deputy Frederick for allegedly assaulting and battering Mr. Pullom. Doc. 1 at 7. Mr. Pullom does not allege any additional facts regarding his assault and battery claims. *See id*. The Sheriff's Office Defendants assert that "Deputy Frederick is entitled to state/absolute immunity on all state law claims asserted by [Mr. Pullom] because Deputy Frederick was acting

within the line and scope of his duties alleged in [Mr. Pullom's] Complaint." Doc.
8-1 at 6.

"In Alabama, a state agent is immune from civil liability for acts 'arising out
of his or her conduct in performance of any discretionary function within the line
and scope of his or her law enforcement duties.'" *Morton v. Kirkwood*, 707 F.3d
1276, 1285 (11th Cir. 2013) (quoting Ala. Code § 6–5–338(a)). This immunity
applies to "acts arising from the 'enforcement of the criminal laws of the State,
including, but not limited to, law-enforcement officers' arresting or attempting to
arrest persons.'" *Id*. (quoting *Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000)). An
officer loses this immunity if the officer "acts willfully, maliciously, fraudulently, in
bad faith, beyond his . . . authority, or under a mistaken interpretation of the law."
*Id*. (internal quotation marks omitted).

Mr. Pullom alleges that Deputy Frederick was "[a]t all times mentioned [in
the complaint] . . . acting within the scope of [his] duties as [a] law enforcement
officer[] and under color of the law, . . . under the color of ordinances, regulations,
policies, customs and usages of the State of Alabama . . . and the Sheriff's
Department." Doc. 1 ¶ 7. Further, Mr. Pullom alleges that "Deputy Frederick acted
within the scope of his authority as an employee and agent of the Jefferson County
Sheriff's Department." *Id*. Because Mr. Pullom pleads that Deputy Frederick's
conduct was within the scope of his Alabama law enforcement duties, and pleads no

additional facts about Deputy Frederick's alleged assault and battery, Deputy Frederick is absolutely immune from Mr. Pullom's assault and battery claims under Alabama law.

### 3.  Allegations Against Sheriff Pettway

#### a.  Claims Against Sheriff Pettway in His Official Capacity

The Eleventh Circuit has held that "[i]t is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment." *Melton*, 841 F.3d at 1234. Accordingly, the court finds that Sheriff Pettway is "immune from suit under the Eleventh Amendment for [Mr. Pullom's] claims brought against [him] in [his] official capacity as [a] state official[]." *Id.*

#### b.  Sheriff Pettway's Qualified Immunity Defense

Mr. Pullom alleges that Sheriff Pettway negligently hired, trained, supervised, and retained certain deputy sheriffs and officers. Doc. 1 at 5–7. Specifically, Mr. Pullom's complaint alleges that Sheriff Pettway (1) "permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable, and illegal arrests by . . . deputy sheriffs based on the race, origin, and/or ethnicity of the arrestee," (2) "failed to properly investigate the background of its officers, including [Deputy] Frederick, prior to hiring," (3) "refused to investigate former complaints of unlawful, false arrests, false imprisonments, and malicious prosecutions, and,

instead, officially claimed that such incidents were justified and proper," (4) "encouraged and/or failed to discipline deputy sheriffs" for making "unlawful arrests, imprisonments and prosecutions" by "means of both inaction and cover-up," (5) "negligently retained deputies, including [Deputy] Frederick, who had engaged in improper arrests, imprisonments and prosecutions," and (6) "maintain[s] a system of grossly inadequate training pertaining to the law of permissible arrests, imprisonments and prosecutions, and such program fails to meet standard law enforcement training princip[le]s and criteria which are mandated by the State of Alabama." *Id*. ¶¶ 38–43.

Further, Mr. Pullom asserts that Sheriff Pettway "manages and set[s] policies for the Sheriff's Department," *id*. ¶ 5, and has "policies and customs" of "acts, omissions, and systematic deficiencies" that "cause[] . . . dep[u]ty sheriffs to be unaware of proper rules for arrest and imprisonment," which unawareness makes the deputy sheriffs "more likely to engage in false arrests, imprisonments and malicious prosecutions," *id*. ¶ 44. Mr. Pullom also asserts that "[a]s a direct and proximate result of th[ose] . . . policies and customs," Mr. Pullom's "clearly established rights were violated," and he "suffered severe injuries, including great pain and mental suffering[,] . . . incurred medical and legal expenses[,] and was deprived of his liberty." *Id*. ¶ 46.

The Sheriff's Office Defendants assert that Sheriff Pettway is entitled to qualified immunity from Mr. Pullom's federal claims because Sheriff Pettway "clearly satisfied his initial burden that at all times he was performing a discretionary function at the time of any alleged constitutional violation," Sheriff Pettway did not personally participate in Mr. Pullom's arrest and imprisonment, Mr. Pullom's allegations do not establish supervisory liability, and the facts alleged in the complaint do not show a constitutional violation. Doc. 8-1 at 28–32.

Mr. Pullom's complaint alleges that, "[a]t all times mentioned [in the complaint]," Sheriff Pettway was "acting within the scope of [his] duties as [a] law enforcement officer[] and under color of the law, . . . under the color of ordinances, regulations, policies, customs and usages of the State of Alabama . . . and the Sheriff's Department." Doc. 1 ¶ 7. In their motion to dismiss, the Sheriff's Office Defendants assert that Sheriff Pettway "was performing a discretionary function at the time of any alleged constitutional violation." Doc. 8-1 at 28. Accordingly, the parties do not dispute that Sheriff Pettway was acting within his discretionary authority.

"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall*, 610 F.3d 701 (internal quotation marks omitted). "[A]bsent allegations of personal

participation . . . supervisory liability is permissible only if there is a causal connection between a supervisor's actions and the alleged constitutional violation." *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (internal quotation marks omitted). A causal connection can be established when: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (2) "a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (internal quotation marks omitted) (alterations accepted); *accord Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009) (per curium).

"The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Keith*, 749 F.3d at 1048 (internal quotation marks omitted). Further, "to prove that a policy . . . caused a constitutional harm, a plaintiff must point to multiple incidents . . . or multiple reports of prior misconduct by a particular employee." *Piazza*, 923 F.3d at 957 (internal citations omitted); *see also Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("To establish a policy or custom, it is generally necessary to show a persistent and wide-spread

practice."). "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several [subordinates]." *Piazza*, 923 F.3d at 957 (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1312 (11th Cir. 2011)); *see also Depew*, 787 F.2d at 1499 (observing that "random acts or isolated incidents are insufficient to establish a custom or policy").

Other than the isolated incident that he experienced with Deputy Frederick, Mr. Pullom does not allege any facts to show that there was a history of widespread abuse that would have put Sheriff Pettway on notice of the need to correct such abuse. Further, although Mr. Pullom alleges that Sheriff Pettway has certain policies and customs that cause deputy sheriffs to be "more likely to engage in false arrests, imprisonments[,] and malicious prosecutions," he does not allege any other incidents of such constitutional harm outside of the single incident involving Deputy Frederick of which he complains. Doc. 1 ¶ 44. Mr. Pullom also does not allege any facts that show that Sheriff Pettway directed Deputy Frederick to act unlawfully, or that Sheriff Pettway knew that Deputy Frederick would act unlawfully but did not stop such actions. Accordingly, Mr. Pullom does not adequately allege a causal connection between Sheriff Pettway's actions and the alleged constitutional violation to support a supervisory liability claim.

Mr. Pullom's claim that Sheriff Pettway "maintain[s] a system of grossly inadequate training pertaining to the law of permissible arrests, imprisonments[,]

and prosecutions," *id*. ¶ 43, "implicates a different, albeit very similar, rule: under [Section] 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact,'" *Keith*, 749 F.3d at 1052 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994) ("A supervisory official is not liable under section 1983 for an injury resulting from his failure to train subordinates unless his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains.") (internal quotation marks omitted).

The Supreme Court has indicated that, "[a] [supervisor's] culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Keith*, 749 F.3d at 1053 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). A plaintiff alleging a constitutional violation based on a failure to train "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Id*. at 1052 (citing *Connick*, 563 U.S. at 61). To establish that a supervisor "was on actual or constructive notice of the deficiency of

training, [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id.* at 1053 (internal quotation marks omitted).

Mr. Pullom's complaint does not allege any facts demonstrating that Sheriff Pettway had notice of an omission in the training program "pertaining to the law of permissible arrests, imprisonments[,] and prosecutions," Doc. 1 ¶ 43, as Mr. Pullom did not allege a pattern of similar unlawful arrests, imprisonments, and prosecutions by untrained employees. *See Keith*, 749 F.3d at 1053. Accordingly, Mr. Pullom's complaint does not adequately allege a Section 1983 claim for failure to train against Sheriff Pettway.

Because Mr. Pullom fails to meet his burden of showing that Sheriff Pettway violated his constitutional rights, the court does not need to determine whether that constitutional right was clearly established at the time of the alleged violation. *See Piazza*, 923 F.3d at 951. Accordingly, to the extent Mr. Pullom asserts Section 1983 claims against Sheriff Pettway, those claims are subject to the defense of qualified immunity and are dismissed. The Sheriff's Office Defendants' motion to dismiss is **GRANTED**.

## B. The County's Motion To Dismiss

The County moves to dismiss Mr. Pullom's claims against it pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Doc. 9. The County asserts that Mr. Pullom's claims that it negligently hired, trained, supervised,

and retained certain officers should be dismissed because the County "has no authority to hire, train, supervise, retain, or otherwise manage employees of the Office of Sheriff of Jefferson County." *Id.* at 1–2.

Mr. Pullom's complaint alleges that the County "permitted, encouraged, tolerated and ratified a pattern and practice of unjustified, unreasonable, and illegal arrests by its deputy sheriffs based on the race, origin, and/or ethnicity of the arrestee." Doc. 1 ¶ 38. Mr. Pullom also alleges that the County "maintain[s] a system of grossly inadequate training pertaining to the law of permissible arrests, imprisonments and prosecutions, and such program fails to meet standard law enforcement training principals and criteria which are mandated by the State of Alabama." *Id.* ¶ 43.

The County asserts that it is not liable under Section 1983 because the County "cannot and does not instruct the Jefferson County Sheriff's Office, the Sheriff of Jefferson County, or any Jefferson County deputy sheriffs how to ferret out crime, apprehend or arrest criminals, or otherwise perform law enforcement duties." Doc. 9 at 6. Further, the County asserts that it is not liable under Section 1983 because it "has no authority to manage employees of the Office of Sheriff of Jefferson County." *Id.*

"A local government may be held liable under [Section] 1983 only for acts for which it is actually responsible, acts which the local government has officially

sanctioned or ordered." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (internal quotation marks omitted) (alterations accepted). "To evaluate whether a local government is liable under [Section] 1983, a court must identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Id*. (internal quotation marks omitted). When deciding which actors speak with final authority, the court "must determine the actual function of an official in a particular area by reference to the definition of the official's functions under relevant state law." *Id*. (internal quotation marks omitted).

"[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Id*. at 1288. "[T]he sheriff has control over the inmates of the jail, the employees of the jail, and the jail itself," *id*. at 1289 (citing Ala. Code § 14–6–1), and "[t]he County has no authority to manage the sheriff's employees," *id*. Further, "Alabama sheriffs are not county policymakers in their daily management of county jails." *Id*. at 1292.

Because the County is not actually responsible for managing the sheriff's employees, it cannot be liable for the conduct of those employees as alleged by Mr. Pullom. *See* Doc. 1 ¶¶ 38, 43. Accordingly, the County's motion to dismiss is **GRANTED**.

Finally, the court construes Mr. Pullom's complaint as asserting one state-law claim for assault and battery against Deputy Frederick, *see id.* at 7–8, which claim the court found Deputy Frederick to be absolutely immune from under Alabama law, *see supra* at pp. 18–20. To the extent Mr. Pullom's complaint could be construed as asserting other state-law negligence claims against Sheriff Pettway or the County, *see* Doc. 1 at 5–7, the court declines to exercise supplemental jurisdiction over those state-law claims. *See* 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

For the foregoing reasons, the Sheriff's Office Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6), Doc. 8, is **GRANTED**, and the County's Motion to Dismiss, Doc. 9, is **GRANTED**. A separate order will be entered.

**DONE** and **ORDERED** this 24th day of August, 2021.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE